UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20-CR-819-SEP |
| ) | |
| DETRICH L. WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

COMES NOW defendant, Detrich Williams, by and through counsel, and for his Sentencing Memorandum, states to the Court as follows:

**Offense and Plea of Guilty**

Detrich is a 21 year old male who pled guilty before this Court on November 7, 2022 to five counts of a five count indictment. Count 1 charged conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; Counts 2 and 4 charged car jacking, in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2119(1); Count 3 charged brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 924(c)(1)(A)(ii); and Count 5 charged discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 924(c)(1)(A)(ii).

.                     **Sentencing Guidelines**

The presentence investigation report filed in this matter by Officer Katelyn Judge, United States Probation Officer, calculated Detrich's total offense level as to all counts following all enhancements to the advisory guidelines suggested by the Department of Probation to be a 32 with a criminal history category of I. Two of the counts to which Detrich pled, Count 3 - brandishing a

firearm, and Count 5 - discharging a firearm, have a term of imprisonment that is required by statute. In the case of Count 3, it is 7 years consecutive to any other sentence imposed, and as to Count 5, discharging a firearm, it is 10 years consecutive to any other sentence imposed. The over all advisory guideline range suggested by the Department of Probation based upon a total offense level of 32 and a criminal history category I, is 121 months to 151 months, plus 84 months on Count 3 and 120 months on Count 5. This would produce a total low end advisory guideline range of 27 years.

The offense level computation suggested in the presentence investigation report is generally consistent with the position taken by the government in the plea agreement. Because there have been no responses received to the government's submission of restitution questionnaires submitted to any of the victims of the various carjackings identified in the presentence investigation report, the PSR does not contain a two (2) level loss enhancement as contemplated by the government in the plea agreement.

The guideline calculations contained in the presentence investigation report differ greatly from those agreed to by defendant in the plea agreement. Defendant's position as set forth in the plea agreement, and as represented to this Court, is that the presentence investigation report, and the government in this instance, is attempting to not only charge, but also sentence Detrich Williams for offenses committed by other individuals, not Detrich, and often committed by other individuals when Detrich was neither present nor directing those individuals. Detrich's position in this matter is that his guideline offense level, following acceptance of responsibility, is 23, which, with a criminal category of I, produces am advisory guideline range of 46 to 57 months. The two additional counts, not covered by the guidelines, suggest a term of imprisonment of 17 years, which produces a low end advisory guideline and statutory sentencing regime of 21 years. Detrich has directed counsel to

request that this Court impose a downward variance in this matter, and sentence him to a term of 84 months.

## SENTENCING PURPOSES AND FACTORS

In light of the decision by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005) making the guidelines advisory, and later reaffirmed in its decision in *United State v. Gall*, 552 U.S. 38, 128 S.Ct. 586 (2007), this Court is required to impose a sentence that is ***sufficient, but not greater than necessary*** to comply with the sentencing purposes of 18 U.S.C. § 3553(a)(2). Those purposes are as follows:

(A) to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A-D).

This Court must consider the following seven factors in determining the appropriate sentence to impose:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant.

(2) the need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);

(3) the kinds of sentences available;

(4) the guidelines promulgated by the Sentencing Commission;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and

(7) the need to provide restitution to the victims.

18 U.S.C. § 3553(a)(1)-(7).

## Imposition of Sentence

### Nature of the Offense and History and Characteristics of Detrich Williams

### Nature of Offense

The presentence investigation report does differ from the stipulation of facts contained in the plea agreement entered into by Detrich and the government. The facts of the case are as follows:

Between July and October, 2020, a group of teenagers from the Castle Point neighborhood in St. Louis County was involved in a series of carjackings that occurred in the City of St. Louis and in St. Louis County. Included in the group were the defendant, Detrich Williams, and co-defendant, Aaron L. Morris. In all, police have identified 21 incidents of carjacking or attempted carjacking that police believe were committed by this group. It is important to note that this was a loosely organized group, and that carjackings were not always committed by the same people or at the direction of any particular individual.

In some of the incidents, co-defendant Morris would drive other members of the group, often including Detrich Williams, while the group looked for vehicles to carjack. Co-defendant Morris would drive either his mother's SUV or one of the previously stolen cars. In some of the incidents, Detrich Williams would get out of the car driven by Morris, point a gun at the victim, and take the car. At different times, at least two juveniles and another adult were involved with Detrich and co-defendant Morris in the carjackings. In several of the carjackings, Detrich used a pistol that

belonged to co-defendant Morris and that Morris allowed Detrich to use in the carjackings. The pistol was equipped with a distinctive green laser sight that has been identified by several of the victims.

Agents of the FBI and ATF and local police noted that several of the incidents appeared linked through the use of the gun with the green laser sight and by the recovery of several of the stolen cars in the same area of Castle Point. On October 14, ATF executed a search warrant at co-defendant Morris' house in Castle Point and arrested him. Morris was initially interviewed about an unrelated incident in which he and Detrich had been involved in Webster Groves. After being interviewed about the unrelated incident, co-defendant Morris was interviewed about the series of carjackings. Morris admitted to his involvement in the carjackings. Morris admitting to being the driver for many of the carjackings and identified Detrich as the gunman in many of the incidents. A few days later, Detrich was arrested, also on the warrant for the Webster Groves incident, and he was interviewed. Detrich admitted to the overall pattern of carjackings and to having committed several himself as the gunman.

On August 17, 2020, Detrich was involved in the carjacking of a Toyota Camry. Detrich, while armed with a gun, approached the owner of the Camry, demanded the keys, and drove away in the Camry. The owner called police, and the description of the stolen car was circulated to officers in the St. Louis Metropolitan Police Department. On August 19, 2020, officers saw the Camry and attempted to stop it. Detrich was driving the Camry and led the police on a lengthy highspeed chase from the City of St. Louis into St. Louis County. During the chase, Detrich drove at a high rate of speed, ignored stop signs, and drove into the oncoming lanes of traffic while trying

5

to evade police. The chase eventually ended near the Castle Point neighborhood of St. Louis County after police used tire deflating spike strips to disable the Camry.

On September 26, 2020, co-defendant Morris was driving his mother's SUV in the City of St. Louis with Detrich and another person. The occupants of the SUV saw a pizza delivery driver had stopped his Volvo S60 sedan and had gotten out to deliver pizza. Morris pulled over near the Volvo, and Detrich and a third person approached the deliver driver. Detrich knew that the third person was armed with Morris' pistol. The third person pointed the pistol at the delivery driver and Detrich got into the Volvo and drove it away. Morris followed in his mother's SUV. The vehicle that was taken from the delivery driver was a 2017 Volvo S60.

On October 11, 2020, Detrich drove with co-defendant Morris and others to South County Mall in St. Louis County, where they saw a woman exit her Jeep Grand Cherokee and start to walk toward the entrance to the mall. Detrich got out of the SUV and approached the woman while he was armed with a 9mm pistol. Detrich fired the gun into the air as he approached the woman in order to intimidate her. Detrich took the woman's purse and the keys to the Jeep, which Detrich got into and drove away. Co-defendant Morris followed in the SUV that he had drive to the mall. The vehicle that was taken from the woman was a 2017 Jeep Grand Cherokee.

Later, on October 11, 2020, co-defendant Morris was driving an SUV in the City of St. Louis with Detrich and two others. When the group spotted a Jeep Cherokee in an alley, Morris stopped, and the two others got out of the SUV and approached the Jeep while armed with Morris' pistol. The two others confronted the owner of the Jeep, and one of the others used the gun to shoot the owner of the Jeep. The two others then ran back to the SUV driven by Morris, and Morris drove the group away from the scene.

The presentence investigation report alleges multiple sentencing enhancements based upon carjackings and events not mentioned or contemplated in the stipulation of facts in the plea agreement. Specifically, those carjackings referenced in ¶¶ 23, 26 and 28. In ¶ 28 of the presentence investigation report, the Probation Office alleges that the shooting of a victim by Mr. Cannon, during the attempted carjacking, a shooting in which Detrich neither participated nor directed, should result in a four (4) level specific offense characteristic because a victim of the offense suffered bodily injury. Similarly, the Department of Probation substantially increases Detrich's advisory guideline range based upon conduct committed both by other individuals, loosely associated with Detrich and his co-defendant Aaron Morris in the commission of carjackings. It is important to note that only Aaron Morris and Detrich Williams have been charged with these carjackings. Although the government has information regarding the identities of numerous other individuals, only Aaron Morris and Detrich Williams have been charged and appear before this Court. In effect, Detrich and his co-defendant are being punished for the conduct of others, and the advisory guidelines insofar as Detrich is concerned, are substantially increased.

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

[redacted]

**Personal and Family Life - Substance Abuse History - Alcohol and Narcotics**

Detrich began life in a dysfunctional family in a poverty riddled area of St. Louis, Missouri. Detrich first began drinking alcohol at age 16, at which time, he drank weekly to excess. Although consuming large amounts of alcohol, Detrich relates that at that time, he never saw it as problematic.

8

He first began smoking marijuana at age 13 or 14, and smoked daily throughout his teens. Detrich's drug of choice, if you will, and most problematic illegal narcotic, was Xanax and Percocet, which he began taking at age 15, and used on a daily basis until his arrest in 2020. Oftentimes, Detrich remembers that he would experience severe withdrawal symptoms if he was not consuming Xanax and Percocet on a daily basis. In looking at Detrich's early life, it is easy to understand his addiction to drugs and alcohol.

Detrich was born on January 21, 2002 in St. Louis, Missouri. Detrich's parents were Detrich Williams, Sr. and Diedre Johnson. Detrich's father was largely absent from his life during his childhood. Detrich's father died of a heart attack in 2011 when Detrich was 9 years old. Detrich does recall that his mother, despite the financial setbacks and struggles, did everything she could to raise her family. Unfortunately, Detrich and his four maternal siblings struggled along with this mother. When Detrich was approximately 14 years old, his family was evicted from their home, and they had to move into a hotel as a temporary residence. Not having the funds to afford a hotel, Detrich recalls how his family would frequently change residences, staying with friends and extended family members until they were financially forced to move to another location.

In Detrich's neighborhood, Detrich witnessed ongoing drug and criminal activity, particularly gang shootings, and saw many of his friends begin the long, painful road of addiction to illegal narcotics. Detrich's outlet at that point was using marijuana, and then opiates supplemented by regular consumption of alcohol. It was at this time that Detrich began associating with other similarly situated juveniles, many also without fathers or any stability in their lives.

Detrich's early life, during which his family was essentially homeless, meant that he was constantly exposed to poverty, drug use, and a variety of violence outside the home. The violence

9

included murders, drive-by shootings, and gang related activities. Although Detrich does not recall an abusive family environment, no doubt his father's absence from the home impacted Detrich's view of life, and contributed to his involvement in criminal activities.

Over the years, Detrich has been involved in two long-term relationships with women in an attempt to capture the family life he never had. From 2015 to 2019, Detrich was involved with Daija Smith. One child was born of this relationship, Detrich Williams, III. Following the end of Detrich's relationship with Ms. Smith, she moved to the State of Texas, taking his son with her. Prior to his arrest, Detrich had almost daily contact with his son via video chat or telephone. Because his son is in Texas, Detrich is now unable to enjoy any type of personal contact with him. Detrich is very remorseful that the relationship failed, and naturally worries about the safety and security of his son.

Beginning in 2021, Detrich has been in a relationship with Taelor Cotton. He believed the two of them had a child, Dream Williams, who is age one. Dream was born following Detrich's incarceration for this offense, and he has never had any contact with the child on a personal level. However, Detrich was recently notified by the State of Missouri, Department of Family Services, that a DNA test performed excluded Detrich as the father of Dream. Detrich is somewhat conflicted by this turn of events. On the one hand, he believed that he had a young child, and was anxious to meet that child when released from custody. Now, Detrich learns that his relationship with Taelor was not what he thought it was. Looking back, it is easy to understand how Detrich, as many children who grew up in a dysfunctional family, experiencing extreme poverty, homelessness, and neighborhood violence, fell into a commission of crimes with other individuals who no doubt experienced similar events in their lives. Detrich is interested in participating in mental health,

parenting classes, and any other programs currently offered by the Bureau of Prisons while incarcerated that will assist him in being a better father and person upon release from custody. He is hopeful that if he acquires additional mental health skills and counseling while in the Bureau of Prisons, he will be successful upon his release from custody.

**Mental and Emotional Health**

Detrich has struggled over the years with psychological and mental health issues as a result of his dysfunctional childhood marked with violence and homelessness. Detrich was diagnosed at Cardinal Glennon's Children Hospital as suffering from ADHD and bi-polar disorder in 2012. For a period of time, he was prescribed Ritalin, which he stopped taking after a couple of years due to the troubling side effects. Many children, like Detrich, suffer extreme hyperactivity marked with periods of confusion when taking Ritalin for ADHD. Detrich participated on mental health counseling at the Behavioral Health Center in St. Joseph's Hospital in Wentzville, Missouri for a number of years. It was during this time that he experienced extreme depression and anxiety. It was also during this time that he began seriously consuming opiates, marijuana and alcohol.

**Educational and Work History**

Detrich, like many individuals who find themselves committing criminal activity at a young age, dropped out of high school. For a brief period of time, he attended MET Center Alternative School in St. Louis, Missouri before withdrawing in the eleventh grade because of difficulties he experienced in participating in classes as well as general disinterest in the educational system. One bright spot in Detrich's life is that he has for several years worked a number of jobs in the construction industry, both as a general laborer and construction helper. Detrich is anxious to

11

participate in vocational or apprenticeship training while in the Bureau of Prisons, which will enable him to pursue his goals in working in the construction industry.

## Criminal History

Detrich has no criminal history. He has several charges pending in St. Louis City Circuit Court and in the Circuit Court of St. Louis County, which are all related to the federal charges in this matter.

## Title 18 U.S.C. § 3553 Factors

Detrich suffered a particularly troubling and disturbing childhood. He was born to what was essentially a fatherless home, who along with his four siblings and mother, struggled both financially and emotionally throughout his early childhood. Detrich witnessed ongoing crime and drug activities in the neighborhoods in which he was raised. Although his mother did everything she could to raise the children in a stable environment, the family was often homeless, and moved from residence to residence numerous times. Detrich had no stable family life. Detrich grew up without the benefit of a father, and without any adult male guidance whatsoever. Naturally, Detrich turned his association and perhaps guidance, and instead, Detrich learned a moral compass and manner of behavior by relying on other people in his neighborhood who participated in petty crimes, drug deals, and drug use. Detrich is quite simply a product of his environment.

Detrich has significant mental health issues that will need to be addressed. Detrich is anxious to participate in mental health and drug treatment while in the Bureau of Prisons. Detrich is hopeful that the treatment will enable him to better avoid criminal activity following his release from custody. Detrich is also anxious to continue with his education while in the Bureau of Prisons. Detrich knows that some day he will be released from custody, and when he is released, wants to be

able to function as a law abiding, successful member of society. In order to do so, Detrich will need to learn many skills while in the Bureau of Prisons.

Detrich's position regarding this matter is set out in the plea agreement. Detrich believes that his correct advisory guideline range is 46 to 57 months, which will be followed by a statutory term of imprisonment of 7 years and 10 years. Detrich believes that following release from custody, he will be a better person, and will have something to offer to society, his community, his child, and his family. Detrich has asked counsel to request that this Court impose a downward departure and variance from the advisory and statutory range in this matter to a term of 84 months.

The § 3553 factors would be addressed by imposition of a sentence as set forth above. The sentence certainly reflects the seriousness of the offense, and does promote respect for the law. Detrich has never experienced any period of incarceration, and this lengthy sentence suggested will be more that sufficient to promote respect for the law. Further, this sentence does not punish Detrich for the actions and commission of crimes and crimes committed by other individuals. This sentence further protects the public for a long period of time from further crimes by Detrich, and would allow Detrich to participate in and completed needed educational and vocational training while in the Bureau of Prisons.

/s/ Eric W. Butts
ERIC W. BUTTS, #36184MO
Attorney for Defendant Detrich L. Williams
555 Washington Avenue, Suite 400
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
Email: ewbtts@sbcglobal.net

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 30, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Mr. Donald S. Boyce, Assistant United States Attorney, 111 South 10th Street, St. Louis, Missouri 63102.

                                              /s/ Eric W. Butts